| | |
|---|---|
| JIMMY RAMIREZ,<br>    Plaintiff,<br><br>v.<br><br>    Defendants.<br>DEFENDANT "1" a/k/a "DURMAZ TANAYDIN", JOHN DOE DEFENDANTS 2-18 who are owners of the following cryptocurrency deposit wallets where Plaintiff's stolen assts were transferred:<br>**Unhosted Wallets**:<br>bc1qcmj8ttptc33p8jvnzv0dndanz0wyl7mgn02jc9;<br>bc1pmlfh2hu6dpq9tcqwjx7ew7z6ch4rrswdtjf9esdh88c77edj68lsfmt8xe;<br>bc1q4q5hz3u7gpxv6xlfxftfflenm23wmqc9swr96l;<br>bc1qmlyalsvc0rw2wwq7e7ztllp4qegaac6t6dc0dc;<br>bc1qfl3jk84racnmhln8r00ph9stdfacktkph7mqr8;<br>bc1quw5w6ehsyntdkadsh6xxe8mqwrw8thhp2tv62y;<br>bc1qfn02pph94nx8eh9dnt3zw74n7zzdclan7x0avl;<br>bc1qn40samlgqque4j6vum7n5gsvd4rje2cutjr4u2;<br>bc1qzfgepsl0gdd53lwy0lhlupcz73hta3skagd5un;<br>bc1qg29432ww0r3388f3q8qz258r8kxxwm24fd69lw;<br>bc1q8gujzts3l4jr44fd9s5f7uzl05aqrf9n72g95m;<br>bc1qzqy72anj0h526rsxcsf5geahs43k97v97xda9j;<br>bc1qxrj6yx8juthzymnmne9l52mgtthq34gguaqksm;<br>bc1qgl8tz5z4tazsjqd5zfsxdzpv90xd7d5m083kwe;<br>bc1q5l2pzdqqeylpnlp2vussdkzngq4gc8v5d72g93;<br>bc1qa67gjxahwq4hsxt4ruxzden34d6v3tmtws3mqd;<br>**HitBTC**:<br>bc1qdfl3dfnwwvlqa5jpckh0ccwpjczh5y566c4g76<br><br>    Defendants. | CASE NO. 25-1576-GGG-DPC<br><br>SECTION T (2) |

<u>**ORDER GRANTING PLAINTIFF'S EX PARTE EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**</u>

Before the Court is Plaintiff's Emergency Motion for Temporary

1

Restraining Order Without Notice against Defendant "1" a/k/a "DURMAZ TANAYDIN" and his accomplices, JOHN DOES 2-18, R. Doc. 2, ("Motion"). As explained below, after careful review of the Motion and Plaintiff's supporting declarations, Plaintiff has satisfied the requirements for the issuance of a temporary restraining order.

## BACKGROUND

Plaintiff Mr. Ramirez is a long-term investor in Bitcoin (BTC), having accumulated his holdings since 2017 through a disciplined strategy of daily cost averaging, as well as through proceeds from the sale of rental properties and rollovers from his IRA and 401(k) retirement accounts. His investment was intended to provide long-term financial security for his young family.

On or about July 15, 2025, Mr. Ramirez downloaded a mobile application titled "Sparrow Multi-Sig" from the Apple App Store. The application used the name and branding of the legitimate Sparrow Wallet desktop application, a well-known Bitcoin wallet software, and was presented in a manner that led Plaintiff to reasonably believe it was an official mobile version of the Sparrow Wallet.

On July 25, 2025, at approximately 3:08 PM Central Standard Time, Mr. Ramirez opened the "Sparrow Multi-Sig" mobile app and was prompted to input his Bitcoin wallet seed phrase. Believing the app to be legitimate and secure, Mr. Ramirez entered his seed phrase, which provided full access to his Bitcoin wallet stored on a ColdCard Q cold storage device.

Immediately after entering the seed phrase, the app displayed an error message stating that the import was unsuccessful and to try again later. Suspicious of the message, Mr. Ramirez promptly accessed the desktop version of the "Sparrow" Wallet and discovered that his Bitcoin wallet had been emptied.

A total of 7.40 BTC—valued at approximately $865,000 at the time, had been transferred out of Mr. Ramirez's wallet without his authorization. These funds represented the entirety of his long-term Bitcoin holdings.

Upon further investigation, Mr. Ramirez discovered that the Sparrow Multi-Sig mobile application was not affiliated with the legitimate Sparrow Wallet project. Instead, it was a fraudulent application designed to deceive users into entering their seed phrases, thereby enabling the theft of their cryptocurrency.

Using blockchain forensic tracing tools, Plaintiff traced a portion of the stolen Bitcoin – approximately 1.9 BTC valued at approximately $225,490 – to a deposit wallet bc1qdfl3dfnwwvlqa5jpckh0ccwpjczh5y566c4g76 hosted by the cryptocurrency exchange HitBTC.

Additional stolen funds were traced to multiple unhosted wallets, which are currently being monitored for movement to centralized exchanges where further legal action may be taken to freeze the assets.

The wallet addresses where Plaintiff's stolen assets currently sit are believed to be owned or controlled by Defendants and were used to launder the digital assets stolen from Plaintiff.

As set forth in Plaintiff's Complaint, Defendants stole a significant amount of cryptocurrency – 7.40 Bitcoin (BTC) – which is valued at approximately $865,000.[1]  Plaintiff tracked the cryptocurrency to one cryptocurrency exchange (HitBTC) and multiple unhosted wallets.

Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets, it has become apparent that Defendants have stolen all of Plaintiff's assets; and those assets have been

transferred to cryptocurrency accounts under Defendants' sole control.

Plaintiff's stolen assets have been traced to cryptocurrency wallet addresses at cryptocurrency exchange HitBTC (destination address bc1qdfl3dfnwwvlqa5jpckh0ccwpjczh5y566c4g76), a holstered wallet (1Rmp43KjjhrVcBPvsSRVtKQMmbnRJWbR8), as well as unhosted wallet addresses believed to be owned or controlled by Defendants.

As set forth in Plaintiff's Verified Complaint, Defendants stole 7.40 Bitcoin (BTC),valued at approximately $865,000.

Given these facts, Plaintiff commenced this action and is entitled to a Temporary Restraining Order freezing Defendant "1" and/or the JOHN DOES 2-18 Defendants' assets – including all wallets that were used by Defendants to steal Plaintiff's cryptocurrency – to preserve the *status quo ante* pending the outcome of this litigation.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 65, a Court may grant a temporary restraining order *ex parte*. As required by the Rule, specific facts in the form of an affidavit or Verified Complaint must demonstrate an "immediate and irreparable injury, loss, or damage will result to movant before the adverse party can be heard in opposition," and the attorney for the movant must certify in writing any efforts made to provide notice to the adverse party. *See* Fed. R. Civ. P. 65(b)(1). Any Order issued without notice to the adverse party must state "the date and hour it was issued; describe the injury and state why it is irreparable; state why the Order was issued without notice and be promptly filed in the Clerk's Office and entered in the record. The Order expires at a time after entry — not to exceed fourteen (14) days." *Id*. at (b)(2).

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is

not

granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the *status quo* and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

## **ANALYSIS**

Plaintiff has shown a strong likelihood of success on the merits of her claims against Defendant "1" and JOHN DOES 2-18 for: (1) fraud, (2) conversion, (3) unjust enrichment, (4) and violations of 18 U.S.C. § 1030, as well as for imposition of a constructive trust and disgorgement of funds held by Defendants in the aforementioned Destination Addresses to which Defendants transferred any portion of the funds purportedly stolen from Plaintiff. Specifically, in light of the foregoing facts, Plaintiff is entitled to a temporary restraining order freezing Defendants assets — including the Destination Addresses maintained by Defendant "1" and his accomplices JOHN DOES 2-18 or by any entity under their control — to preserve the *status quo ante* pending the outcome of this litigation.

The cryptocurrency assets at issue are specific, identifiable property and can be traced in Defendants' assets in the Destination Addresses or elsewhere. Plaintiff has established in his Motion and the Declarations in support thereof that Plaintiff's rights will be immediately and irreparably harmed absent a temporary restraining order from this Court. Without entry of the temporary restraining order, Plaintiff may be unable to recover for his equitable claims.

Moreover, considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses

to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiff. Plaintiff was victimized by the theft of his cryptocurrency assets, and it appears from the record that Defendant "1" and/or JOHN DOES 2-18 have no right to claim either possession or ownership of Plaintiff's stolen assets. Therefore, there is a high likelihood Plaintiff will succeed on his claims. The balance of hardships also favors Plaintiff because a temporary restraining order would preserve the *status quo ante* and prevent irreparable harm until such time as the Court may hold a hearing. Entry of a temporary restraining order will also not harm the public interest, which is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) and providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the stolen assets in this action.

Lastly, because of the apparent strength of Plaintiff's case, the Court waives/need only provide a modest amount of security pursuant to Fed. R. Civ. P. 65(c) at this time.

## CONCLUSION

For the following reasons, **IT IS ORDERED** that Plaintiff's Motion is **GRANTED.** A temporary restraining order is entered as follows:

1. Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which she/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendants or any business entity through which she/they act or which act in active concert or participation with them; including but

6

not limited to those assets currently held in: (1) the Destination Addresses; (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than in the Destination Addresses.

2. Notice was not provided to Defendant "1" or JOHN DOES 2-18 prior to entry of this Order because his/their identities are presently unknown to Plaintiff.

3. Pursuant to Fed. R. Civ. P. 65(c), which requires that security must typically be posted by Plaintiff, the Court has determined that One Hundred Dollars ($100.00) is adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained by this Order. Therefore, pursuant to Fed. R. Civ. P. 65, Plaintiff shall — within ten (10) calendar days of this Order — post a bond in the amount of One Hundred Dollars ($100.00) to secure this Order. In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

4. Upon a showing of good cause by any party-of-interest, the Court may enter a further order amending the amount of Plaintiff's bond requirement as a means of providing a source of funds to which Defendants may be entitled for a wrongful injunction or restraint.

5. This Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed. R. Civ. P. 65(b)(2) unless, for good cause shown, this Order is extended or Defendant "1" or JOHN DOES 2-18 consent that it should be extended for a longer period of time. However, the Court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

6. A preliminary injunction hearing to determine whether to convert this temporary restraining order into a preliminary injunction is set for August 12, 2025, at 10:00 A.M. at 500 Poydras Street, Courtroom C-552, New Orleans, LA 70130.

New Orleans, Louisiana, this 31st day of July, 2025.

                                                                                          _____
                                                                                          GREG GERARD GUIDRY
                                                                                          UNITED STATES DISTRICT JUDGE