## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JIMMY RAMIREZ**                                          **CIVIL ACTION**

**VERSUS**                                                       **NO: 25-1576**

**DEFENDANT 1 a/k/a**                                  **SECTION: T (2)**
**"DURMAZ TANAYDIN," ET AL.**

## ORDER AND REASONS

Before the Court is Plaintiff Jimmy Ramirez's Motion for Review of Magistrate Judge's Order Pursuant to Fed. R. Civ. P. 72(a) (R. Doc. 29, "the Motion"). In the Motion, Plaintiff seeks review of the Magistrate's Order of September 2, 2025 (R. Doc. 24), in which Plaintiff's Motion to Modify the Discovery Order was granted in part and denied in part. The Court finds that Plaintiff has failed to meet his burden under applicable law. Accordingly, Plaintiff's Motion is **DENIED** and the Magistrate's decision is **AFFIRMED**.

## I. FACTUAL BACKGROUND

Plaintiff, Jimmy Ramirez, is "a long-term investor in Bitcoin (BTC)," R. Doc. 1, p. 5, a form of cryptocurrency. He has accumulated Bitcoin holdings since 2017 "through a disciplined strategy of daily cost averaging as well as through proceeds from the sale of rental properties and rollovers from his IRA and 401(k) retirement accounts." *Id.* Plaintiff states that this investment was intended to provide long-term financial security for his young family. *Id.*

On or about July 15, 2025, Plaintiff downloaded a mobile application titled "Sparrow Multi-Sig" from the Apple App Store. *Id.* Sparrow Wallet is a legitimate and well-known Bitcoin wallet software available for desktop computers. *Id.* However, the "Sparrow Multi-Sig" application was not affiliated with the legitimate Sparrow Wallet project. *Id.* at p. 6. Nevertheless,

1

its use of the name and branding of Sparrow Wallet's desktop application led Plaintiff to reasonably believe that it was an official mobile version of the Sparrow Wallet service. *Id.* at p. 5.

On July 25, 2025, at approximately 3:08 p.m. Central Standard Time, Plaintiff opened the "Sparrow Multi-Sig" application and was prompted to input his Bitcoin wallet seed phrase.[1] *Id.* at pp. 5-6. Believing the application to be legitimate and secure, Plaintiff followed this instruction, thereby providing full access to his Bitcoin wallet stored on a ColdCard Q cold storage device.[2] *Id.* at p. 6.

Immediately after entering the seed phrase, the application displayed an error message stating that the import was unsuccessful and urging Plaintiff to try again later. *Id.* Suspicious of the message, Plaintiff promptly turned to the official desktop version of Sparrow Wallet application and discovered that his Bitcoin wallet had been emptied. *Id.* A total of 7.40 BTC—valued at approximately $865,000 at the time and representing the entirety of Plaintiff's long-term Bitcoin holdings—had been transferred out of his wallet without authorization. *Id.*

Upon further investigation, Plaintiff discovered that the "Sparrow Multi-Sig" mobile application was not affiliated with the legitimate Sparrow Wallet project. *Id.* Instead, it was a fraudulent application designed to deceive users into entering their Bitcoin seed phrases for purposes of cryptocurrency theft. *Id.* The creator and distributor of the application was later identified as Defendant "1" in this matter, a/k/a "Durmaz Tanaydin." *Id.* at p. 9.

Plaintiff was able to trace portions of the stolen assets using blockchain forensic tracing tools. *Id.* at p. 6. Approximately 1.9 BTC—valued at roughly $225,490 (at the time of transfer)—

---

[1] "A seed phrase is a sequence of random words that stores the data required to access or recover cryptocurrency." *What Is A Seed Phrase?*, COINBASE, https://www.coinbase.com/learn/wallet/what-is-a-seed-phrase (last visited Nov. 3, 2025).

[2] A cold storage device is a security device that "store[s] private keys [to a Bitcoin wallet] completely offline while still allowing users to confirm – or "sign" – crypto transactions." Thomas Sweeney, *The Best Cold Storage Wallets for Keeping Your Crypto Safe in 2025*, COINTRACKER (Sep. 18, 2025), https://www.cointracker.io/blog/best-cold-storage-wallets.

was traced to a deposit wallet hosted by the cryptocurrency exchange HitBTC bearing the destination address bc1qdfl3dfnwwvlqa5jpckh0ccwpjczh5y566c4g76. *Id.* Additional stolen funds were transferred to multiple unhosted wallets, and Plaintiff has since monitored these wallets for movement to centralized exchanges. *Id.* at pp. 7-8.

After the "Sparrow Multi-Sig" application was removed from the Apple App Store, "Defendants began to move Plaintiff's stolen Bitcoin from the unhosted wallets." R. Doc. 15, p. 2. Approximately 0.543387 BTC was transferred to a wallet hosted by the Binance exchange with the wallet address 1Rmp43KjjhrVcBPvsSRVtKQMmbnRJWbR8. *Id.* Plaintiff later discovered through a forensic expert that "multiple deposit wallets at the Exolix, ByBit, and ChangeNOW exchanges [] received the currency that was swapped from Plaintiff's stolen Bitcoin." R. Doc. 20, p. 3. He also learned that Defendants carried out anonymous "swaps via bridge and coin swap services" ChangeNOW and Changelly.[3] *Id.* at p. 4.

## II. PROCEDURAL HISTORY

Plaintiff filed suit against several unidentified defendants for theft of cryptocurrency assets in this Court on June 30, 2025. R. Doc. 1. Along with the Complaint, Plaintiff filed an Emergency Ex Parte Motion for Temporary Restraining Order against Defendants "to freeze Plaintiff's assets . . . held by Defendant '1' a/k/a 'DURMAZ TANAYDIN' or his cohorts Defendants JOHN DOES 2-18, without prior notice to Defendants." R. Doc. 2, pp. 1-2. He then filed an Emergency Motion to Supplement and Expand the Motion for Temporary Restraining Order to include additional wallets identified by Plaintiff after filing his Complaint. R. Doc. 5, pp. 1-2. Finding that Plaintiff had shown a strong likelihood of success on the merits of the claims against Defendants for fraud,

---

[3] Plaintiff explained that "coin swap" services like ChangeNOW and Changelly allow users to exchange one kind of cryptocurrency for an alternative cyptocurrency. R. Doc. 29, p. 3. "The users transfer their cryptocurrency to the swap site service, select the kind of cryptocurrency they would like to exchange for, and then input a destination address whereto the swapped funds will be sent." *Id.*

conversion, unjust enrichment, and violations of 18 U.S.C. § 1030, the Court granted the Motion and entered the temporary restraining order. R. Doc. 6, pp. 5-7.

Plaintiff then sought leave of court to conduct limited third-party discovery via subpoenas duces tecum to the Apple App Store and the HitBTC and Binance exchanges to obtain information necessary to identify and serve the defendants. R. Doc. 8, p. 2. Specifically, Plaintiff first sought leave to obtain Know Your Customer ("KYC") and Anti-Money Laundering ("AML") information from Binance and HitBTC to help identify the names of the Defendants, their locations, and account details. *Id.* at p. 3. Second, he sought to subpoena Apple for information submitted when the fraudulent "Sparrow Multi-Sig" application was uploaded to its App Store. *Id.* Third, he sought to subpoena Namecheap.com, the company which hosted Defendants' fraudulent website, Sparr0web.xyz. *Id.* at pp. 3-4. Finally, Plaintiff also indicated his intent to "serv[e] discovery upon other third-party services connected to Defendants' fraudulent activity and Plaintiff's loss including but not limited to cell phone and mobile carriers, payment processors, fiat on/off-ramp services, and cloud storage providers." *Id.* at p. 4.

The Magistrate considered Plaintiff's Motion for Expedited Discovery and found that Plaintiff had established good cause for expedited discovery to obtain "any identifying information" collected from Defendants by Binance, HitBTC, Apple, and Namecheap.com. R. Doc. 14, pp. 6-7. However, the Magistrate reasoned, Plaintiff had not established good cause to obtain other requested information from the companies—such as account balances, transaction history, or any other financial information—because "[t]hese items do not relate to obtaining necessary information for service but appear to relate to the affirmative relief sought through this lawsuit and go beyond the underlying basis justifying the need for expedited discovery." *Id.* at p. 7. Similarly, the Magistrate held that "Plaintiff has not established good cause to open discovery

as to any unidentified third party for unspecified information." *Id.* Accordingly, Plaintiff's Motion was granted in part and denied in part. *Id.* at pp. 7-9. The Magistrate found that "[t]his measured approach allows Plaintiff to obtain enough information to identify the Defendants and serve process but reserves other discovery until after a Rule 26(f) conference as required under Rule 26(d)(1)." *Id.* at p. 8.

Plaintiff then filed an *Ex Parte* Motion to Modify the Court's Order and Reasons to incorporate (1) additional, newly-identified wallet addresses held at Exolix, ByBit, and ChangeNOW cryptocurrency exchanges and (2) KYC information and transaction data related to Plaintiff's stolen assets from the Challengy cryptocurrency service provider. R. Doc. 20. Reiterating that good cause exists for authorizing expedited discovery "to enable a plaintiff to ascertain certain identifying information regarding John Doe defendants" but not for "merits-based discovery related to substantive relief sought," the Magistrate granted in part and denied in part Plaintiff's Motion to Modify. R. Doc. 24, p. 1. Specifically, Plaintiff was permitted to serve discovery upon the requested exchanges and provider, but this discovery was "limited to seeking only the name, address, telephone number, and e-mail address associated with the forensically identified account(s)." *Id.* at p. 2.

Plaintiff then filed a timely motion, pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72.2, requesting review of the Magistrate's decision as to the ChangeNOW and Changelly data sought. R. Doc. 29. Specifically, Plaintiff argues that the Court should grant his discovery request because (1) rather than "highly confidential or personal information," Plaintiff seeks "what amounts to a time stamp and a transaction identifier" that will allow continued tracking of the stolen funds beyond the coin swap services; (2) "[n]o privacy interests are implicated" because the transaction data sought "likely only includes the destination wallet

addresses input by Defendants;" and (3) "Plaintiff has shown good cause to seek this information." *Id.* at p. 2. For these reasons, Plaintiff argues, his request for transaction data from ChangeNOW and Changelly "is well within the limitations of Rule 26." *Id.* at p. 4.

## III. LEGAL STANDARD

### a. *Standard of Review of a Magistrate Judge's Ruling*

"United States Magistrate Judges have the power to hear and determine pretrial matters as designated by the court." *Barnes v. Dolgencorp, LLC*, No. CV 22-2179, 2023 WL 7403450, at *2 (E.D. La. Nov. 9, 2023) (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)). "A magistrate judge is afforded broad discretion in resolving non-dispositive pre-trial matters[.]" *Id.* (citing *Palmisano, LLC v. N. Am. Capacity Ins. Co.*, No. 19-cv-12755, 2020 WL 1429857, at *1 (E.D. La. Mar. 24, 2020)).

Rule 72(a) of the Federal Rules of Civil Procedure governs a district court judge's review of a magistrate judge's decision on a non-dispositive pretrial matter. A party who objects to a magistrate judge's ruling "may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). Once a timely objection is filed, the district judge must consider the objection and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* This high standard requires that the district court affirm the magistrate judge's decision unless it is "left with the definite and firm conviction that a mistake has been committed." *Barnes*, 2023 WL 7403450 at *2 (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Yelton v. PHI, Inc.*, 284 F.R.D. 374, 375 (E.D. La. 2012)).

### b. *Standard for Authorizing Expedited Discovery*

As explained in the Magistrate's Order and Reasons, R. Doc. 14, Rule 26(d)(1) of the Federal Rules of Civil Procedure prohibits discovery from any source before the Rule 26(f)

conference except when authorized by, among other things, a court order. Fed. R. Civ. P. 26(d)(1). While expedited discovery is available in certain situations, it his highly disfavored and not the norm. *E.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000). "Absent an affirmative showing of good cause, the party seeking discovery in advance of a Rule 26(f) conference will be unable to overcome the procedural requirements necessary to circumvent the standard discovery timeline." *Bryan v. Walmart, Inc.*, No. 23-7116, 2023 WL 8890341, at *3 (E.D. La. Dec. 26, 2023) (Ashe, J.) (quoting *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, No. 06-4091, 2007 WL 9780392, at *2 (E.D. La. July 27, 2007)).

District courts generally employ either (1) the preliminary injunction-style analysis known as the *Notaro* test or (2) the "good cause" or "reasonableness" standard when determining whether to exercise its authority to order expedited discovery. *E.g.*, *Crutchfield v. City of New Orleans*, No. CV 17-08562, 2017 WL 4812408, at *1 (E.D. La. Oct. 25, 2017) (citing *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982); *St. Louis Grp., Inc. v. Metals and Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011)). Although the Fifth Circuit has not specified which standard to use, "several district courts within the Circuit have expressly employed the 'good cause' standard when addressing the question whether to authorize early discovery." *Id.* at *2 (citing *BKGTH Prods., LLC v. Does 1-20*, No. CIV.A. 13-5310, 2013 WL 5507297, at *4 (E.D. La. Sept. 30, 2013) (citing *St. Louis Grp.*, 275 F.R.D. at 239-40)). "The burden of showing good cause is on the party seeking the discovery, and the proposed discovery must be narrowly tailored in scope to seek only necessary information." *Id.* (citations omitted).

"Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo*

*Electron. Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Factors which courts consider to determine whether "good cause" exists for expedited discovery include (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; (5) how far in advance of the typical discovery process the request was made; (6) whether plaintiff makes a prima facie showing of harm; (7) the specificity of the discovery request; (8) the absence of alternative means to obtain the subpoenaed information; (9) the necessity of the subpoenaed information to advance the claim; and (10) the user's expectation of privacy. *St. Louis Grp.*, 275 F.R.D. at 239 n.4; *Turner Indus. Grp., LLC v. Int'l Union of Operating Eng'rs, Loc. 450*, No. CIV.A. H-13-0456, 2013 WL 2147515, at *3 (S.D. Tex. May 10, 2013).

It is not uncommon for courts to find good cause for expedited discovery when sought to ascertain the identity of a John Doe defendant. *See, e.g.*, *Wuluvarana v. Does*, No. 22-CV-982-PP, 2023 WL 183874, at *4 (E.D. Wis. Jan. 13, 2023) (citing *Jacobo v. Doe*, No. 22-cv-672-DAD-BAK, 2022 WL 2079766, at *1 (E.D. Cal. June 9, 2022)). *See also Yogaratnam v. Doe*, No. CV 24-393, 2024 WL 4838925, at *7 (E.D. La. Nov. 20, 2024) (authorizing expedited discovery solely to ascertain identifying information with respect to John Doe defendants in cryptocurrency theft action). To find good cause in such a scenario, courts have established a four-part test which asks "whether the plaintiff (1) identifies the Doe defendant with sufficient specificity that the Court can determine that the defendant is a real person who can be sued in federal court, (2) recounts the steps taken to locate and identify the defendant, (3) demonstrates that the action can withstand a motion to dismiss, and (4) proves that discovery is likely to lead to identifying information that will permit a service of process." *ZG TOP Tech. Co. v. Doe*, No. 19-92, 2019 WL 917418, at *2 (W.D. Wash. Feb. 25, 2019) (citing *Bodyguard Prods., Inc. v. Doe 1*, 17-1647, 2018 WL 1470873,

at *1 (W.D. Wash. Mar. 26, 2018) (citing *Columbia Ins. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999))). Expedited discovery should not be allowed if it is clear either that the discovery requested would not uncover the identities of the defendant(s) or that the complaint would be dismissed on other grounds. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

## IV. ANALYSIS

Having reviewed the Magistrate Judge's Orders (R. Docs. 14 and 24), the Court finds that the Magistrate's legal conclusions are neither clearly erroneous nor contrary to law. Plaintiff contends that his discovery request for "the highly relevant transaction data held by ChangeNOW and Changelly that was generated as a result of Defendants converting Plaintiff's Bitcoin to alternative cryptocurrency" is "narrowly tailored" and "well within the limitations of Rule 26" of the Federal Rules of Civil Procedure. R. Doc. 29, p. 4. He adds that the transaction data in question "is limited to the recipient wallet address input by Defendants to where the converted cryptocurrency was sent." *Id.* at p. 6. Plaintiff further asserts that the Magistrate's finding that granting his discovery request for transaction data would violate privacy interests and is unlikely to lead to information identifying the Defendants is "clearly erroneous as it misinterprets and misunderstands the nature of cryptocurrency and the cryptocurrency services at issue." *Id.* at p. 4.

Plaintiff states that he "only seeks the transaction data collected as part of the illicit transactions which will allow [his] trace and investigation as to these specific stolen assets to advance." *Id.* at p. 6. As explained by the Magistrate, expedited discovery in a case with unidentified defendants is designed "to enable a plaintiff to ascertain certain identifying information regarding John Doe defendants" rather than to give a plaintiff a head start on "merits-

based discovery related to the substantive relief sought." *See, e.g.*, R. Doc. 24, p. 1. The transaction data sought falls within the latter category.

Plaintiff has also directed the Court to a decision from the Eastern District of Texas which states that "any privacy interests that alleged cybercriminals have concerning the discovery of information about their identities and activities is outweighed by the need to adjudicate victims' claims against them." *Id.* at p. 7 (quoting *Cohn v. Popescu*, No. 1:24-CV-00337, 2024 WL 4525511 (E.D. Tex. Aug. 16, 2024) (citing *Gaponyuk v. Alferov*, No. 2:23-CV-01317-KJM-JDP, 2023 WL 4670043, at *4 (E.D. Cal. July 20, 2023)). Plaintiff's reliance on this persuasive authority is misplaced. While less weight should be given to the privacy interests of alleged cybercriminals, the privacy concerns voiced by the Magistrate are those of potentially innocent third parties. As noted by the Magistrate, there is a "lack of evidence establishing that any owner of the unhosted wallets is a holder of the accounts to which Plaintiff's cryptocurrency was transferred rather than some unknown victim of the Defendants." R. Doc. 14, p. 5. These "potentially innocent persons have an interest in avoiding the time and expense required to defend against a 'false positive' identification." *Id.* (citing *Mizrahi v. Anna*, No. 23-2462, 2023 WL 7273725, at *5 (D.N.J. Nov. 3, 2024)).

Courts regularly impose conditions limiting the scope of expedited discovery in cases involving Doe defendants to protect such interests. *See, e.g.*, *Jacobo*, 2022 WL 207966, at *3-4 (citing *ZG TOP Tech. Co*, 2019 WL 917418, at *3) (refusing to authorizing expedited discovery of transactional data where plaintiff made "no showing that this information [was] necessary to 'obtain defendant's identity' or to ascertain 'a physical and/or electronic address at which defendant can be given notice of the claims asserted against him in this lawsuit'").

In fact, in the case upon which Plaintiff relies, *Cohn v. Popescu*, the plaintiff's discovery request was granted specifically because he sought "only information sufficient to identify the Defendants' payments provider and the Defendants' accounts with that provider." *Cohn*, 2024 WL 4525511 at *5. Additionally, when analyzing whether to grant the requested discovery, the *Cohn* court noted that "[c]ourts have authorized similar discovery where the plaintiff adduced evidence that the persons about whom the information was sought were cybercriminals." *Id.* (citations omitted). The Magistrate's decision is consistent with that framework because, in the instant case, doubt remains as to whether the owners of each unhosted wallet are participants in the scheme which defrauded Plaintiff or additional victims of the same cybercriminals. Allowing discovery of the additional data sought could violate these additional victims' privacy interests.

Additionally, Plaintiff states in the instant Motion for Review that "ChangeNOW has already informed Plaintiff that KYC information was not collected on the transactions at issue." R. Doc. 29, p. 7 n.3. It appears that Plaintiff offers this information to support the need to expand the scope of discovery. However, Plaintiff learned of this *after* filing the Motion to Modify the Discovery Order (R. Doc. 20). R. Doc. 29, p. 2. As such, no clear error was committed when Judge Currault ruled on Plaintiff's Motion without considering information that Plaintiff himself neither had nor presented to the Court. Should Plaintiff seek further modification of the discovery order based on this new information, the proper procedural channel is through an additional Motion to Modify, not a Motion for Review of the Magistrate Judge's previous order.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Review (R. Doc. 29) is **DENIED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's decision (R. Doc. 24) is **AFFIRMED**.

New Orleans, Louisiana, this 18th day of   November   2025.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE